UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAYANTHIKA WIJEWEERA, Ph.D.,

Plaintiff,

v.                                                                  C-1-01-272

PROCTER & GAMBLE CO.,

Defendant.

## O R D E R

This matter is before the Court upon Defendant's motion for summary judgment (Doc. 35), which Plaintiff has opposed (Doc. 39), and as to which Defendant has replied.  (Doc. 41). Also before the Court are the parties' respective proposed findings of fact and conclusions of law.  (Docs. 38, 43, 44, 45).

### Procedural History/The Parties' Claims

On May 10, 2000, Plaintiff Jayanthika Wijeweera filed her original complaint against Defendant The Procter & Gamble Company ["P&G"] in the Superior Court of Pima County, Arizona.  (*See* Doc. 1, Exh. B).  By Notice of Removal dated October 19, 2000, Defendant removed that action to the United States District Court for the District of Arizona.  (*See* Doc. 1). The case was transferred to this Court on May 4, 2001.  (*See* Doc. 10).

On February 11, 2002, Plaintiff filed an amended complaint, setting forth claims for age discrimination in violation of the federal Age Discrimination in Employment Act ["ADEA"], and for retaliation in violation of Ohio Rev. Code § 4112.02(I).  (Doc. 28).  Alleging that in 1997, at 50 years of age, she was qualified for, applied for and was interviewed for two

toxicologist positions in Defendant's organization, Plaintiff contends that Defendant failed to hire her for the first position (in Kobe, Japan) because of her age, and subsequently failed to hire her for a second position (in Cincinnati) due to her age and in retaliation for her complaints of age discrimination as to the earlier hiring decision.  (Doc. 28).  Plaintiff alleges that Defendant hired "significantly younger candidates" for both positions (Doc. 28, ¶ 24), and that its actions were "intentional, willful, wanton, and malicious in nature."  (Doc. 28, ¶¶ 26, 33).  She requests compensatory and punitive damages, attorneys fees and costs, as well as other legal and equitable relief, including retroactive hiring as a toxicologist.  (*See* Doc. 28, p. 5).

On January 31, 2003, Defendant filed a motion for summary judgment as to the entire amended complaint.  (Doc. 35).  Defendant argues that as a matter of law, Plaintiff cannot prevail on her claim of age discrimination, as she was not qualified for either toxicologist position, and as Defendant had legitimate reasons for deciding not to hire Plaintiff for either position. It asserts that Plaintiff's dishonesty in falsely representing that she never previously had applied or interviewed for a toxicologist position with P & G made her unqualified for both jobs. (Doc. 35, pp. 15-16).  In addition, Defendant urges that Plaintiff's state law retaliation claim is barred by the applicable statute of limitations, and that the retaliation claim also fails on its merits, as a matter of law.

In opposing Defendant's motion, Plaintiff urges that genuine issues of material fact remain with respect to both her age discrimination and retaliation claims.  (Doc. 39).  She asserts that she has presented direct evidence as to the age discrimination claim, in the form of an interviewer's questions about her age and his comments about the undesirability of beginning a career in Japan at that age.  (Doc. 39, pp. 12-13).  Additionally, noting that Defendant challenges

only the "qualification" prong of her *prima facie* age discrimination claim, she argues that she was objectively qualified for both toxicologist positions.  (Doc. 39, pp. 14-15).  Contending that Defendant's articulated reasons for failing to hire her were pretextual, she also attacks the credibility of Defendant's proffered rationale in several respects.  (Doc. 39, pp. 16-24).  Finally, as to her retaliation claim, Plaintiff argues that a six-year statute of limitations applies, that she has established a *prima facie* case, and that the same suggestions of pretext undermine Defendant's proffered explanation for failing to hire her.  (Doc. 39, pp. 24-26).  She thus argues that summary judgment is unavailable as to either claim.

In reply, Defendant denies that any interviewer's remarks constitute direct evidence of age discrimination, or that Plaintiff has demonstrated that Defendant's articulated reasons were pretextual.  (Doc. 41, pp. 1-12).  Apparently abandoning its statute of limitations argument,[1] Defendant also maintains that Plaintiff cannot establish a *prima facie* case of discrimination. (Doc. 41, pp. 13-16).  Defendant thus reiterates the appropriateness of  summary judgment.

### Findings of Fact

Construing all evidence in Plaintiff's favor, for purposes of summary judgment only, the Court finds as follows regarding all facts deemed to be relevant to this decision:

1.  Plaintiff, a resident of the State of Arizona, holds a Ph.D. in toxicology.  At all times relevant to this action, she was over 40 years of age.

2.  Defendant is an Ohio corporation with its corporate headquarters located in Cincinnati, Ohio.  Defendant is an employer and does business in this district within the meaning

---

[1]Defendant's reply undertakes no effort whatsoever to refute the arguments in Plaintiff's opposing memorandum asserting that her retaliation claim is subject to, and was brought within, a six-year limitations period. (*See* Doc. 41).

of federal and Ohio law.

3.  A native of Sri Lanka, Plaintiff earned a Bachelor of Science degree with honors in zoology from the University of Ceylon in 1971.  After teaching in Sri Lanka for a number of years, she received a scholarship to the University of Oxford in England, where she earned a Master's degree in ophthalmology in 1983.  She then returned to the University of Ceylon, where she resumed teaching.

4.  In 1986, Plaintiff moved to the United States, in order to pursue a Ph.D. at West Virginia University.  In 1988, after completing the course work required for a doctorate in anatomy, Plaintiff instead transferred to the Department of Pharmacology and Toxicology, where she completed a Ph.D. in toxicology in 1992.  She thereafter accepted a position as a toxicology research associate in the Department of Anesthesiology at the University of Arizona.  Her main duty there was to conduct research in hepatoxicity, funded by a five-year grant that was to expire in 1997.

5.  In March of 1997, Plaintiff attended a Society of Toxicologists ["SOT"] conference in Cincinnati, Ohio, where she explored future job prospects.  Both P&G and P&G Far East, Inc., the company's Asian affiliate (*see* Doc. 35, p. 4), had representatives at that conference to discuss openings for toxicologists, including one position in Kobe, Japan.  Qualifications for the Kobe position included a Ph.D. in a life science, high initiative, good communication skills, focus, and ability to work with others.

6.  At the conference, Plaintiff discussed the Kobe position with Dr. Karen Kohrman of P&G, who passed her interview notes on to others at P&G.  Plaintiff also completed a detailed job application for the Kobe position, indicating that she never before had applied for a position

with P&G.

7.  The open toxicologist position in Japan reported directly to Dr. Randy King, the Section Head for Health and Beauty Care, Human Safety, in Kobe.  Dr. King's direct manager was Dr. Frank Anastasia, then P&G Far East's Associate Director, Health and Beauty Care, Safety and Regulatory.  Dr. Anastasia possessed final authority as to any hiring decision for the open toxicologist position in Kobe, Japan; Dr. King lacked such final hiring authority.

8.  Dr. King nevertheless was very involved in the hiring process for the open toxicologist position in Kobe.  Dr. King used P&G representatives' feedback regarding candidates interviewed at the SOT conference to determine further action on their candidacy. Sometime thereafter, at Dr. King's request, Plaintiff was interviewed by telephone by Dr. Tim Long, P&G's Section Head for Human Safety, Beauty Care Division, who was assisting in the screening of toxicologist candidates.  Dr. Long invited Plaintiff to make a day visit to P&G in Cincinnati, which she scheduled for August of 1997.

9.  On August 20, 1997, two P&G toxicologists – Dr. Ninah Enane-Anderson and Dr. Don Page – took Plaintiff to dinner in Cincinnati.  The three discussed matters related to Plaintiff's visit and interview scheduled for the following day.  According to Plaintiff, she was told that the hiring decision would be based heavily (95%) on the research presentation that she was to give, and that if she were selected as a final candidate, she and her husband would be invited to visit Japan.

10.  On August 21, 1997, Plaintiff met first with Dr. Jim Barnum, a P&G toxicologist and Section Head in Cincinnati, for a one-hour interview, during which he provided information about the toxicologist position in Japan.  Plaintiff then presented her research seminar on

hepatoxicity of drinking water contaminants to several P&G toxicologists and human safety managers, and answered their questions. Finally, Plaintiff met with Drs. Dana Laurie, Mark Lafranconi, Cathy Satter and Charles Thompson.

11. All interviewers and those who attended Plaintiff's research seminar recorded their impressions of Plaintiff on "Interview Assessment Summary" forms and technical seminar evaluation forms.

12. Dr. Laurie recorded a positive impression of Plaintiff, assigning her an overall recruiting score of 25 out of 32, rating her as "excellent" in the "Initiative and Follow-Through" category, and as "very strong" in all other categories. He stated that Plaintiff was "one of the strongest candidates I've interviewed," and indicated that he would hire her.

13. Dr. Lafranconi, too, assigned Plaintiff an overall recruiting score of 25 out of 32, rating her "Technical Mastery" and "Thinking/Problem Solving" as "excellent;" her "Working Effectively with Others" as "strong;" and all other categories, including "Communication," as "very strong." He described Plaintiff as a "solid candidate who has the tools to succeed," and indicated that he would hire her.

14. Dr. Barnum also commented favorably on Plaintiff's candidacy, assigning her an overall recruiting score of 21 out of 32, rating her "Initiative and Follow-Through" as "excellent;" her "Thinking/Problem Solving," "Creativity and Innovation," "Priority Setting" and "Technical Mastery" as "very strong;" and her "Leadership" and "Working Effectively with Others" as "strong." He indicated that he would hire Plaintiff, and recommended that she be considered further for a position.

15. Dr. Satter, however, commented negatively on Plaintiff's communication skills,

indicating that Plaintiff "didn't answer questions directly," and that it was unclear whether Plaintiff "understood what was being asked."

16.  Plaintiff contends that Dr. King thereafter called to congratulate her on her performance during the Cincinnati interview, and told her to prepare to visit Japan with her husband.  Plaintiff claims to have understood this call to mean that she was the final candidate for and was to be offered the Kobe position.  Defendant claims that Dr. King simply told Plaintiff that Dr. Anastasia would be meeting with her.

17.  In an internal email dated September 19, 1997, Dr. King stated that "we are very excited about [Plaintiff's] candidacy and hope that she will accept a position at KTC."  That email further noted that Plaintiff's interview scores were very similar to those of another candidate, WeiQi Lin, to whom P&G did extend an offer of employment.

18.  As late as September 25, 1997, Grover Owens, a Ph.D. recruiter in Cincinnati, believed that Plaintiff already had been invited to Japan.

19.  On September 25, 1997, while on a scheduled visit to the United States, Dr. Anastasia interviewed Plaintiff for two hours in Cincinnati.  During that interview, Dr. Anastasia questioned Plaintiff about the years in which she had obtained her degrees.

20.  According to Plaintiff, Dr. Anastasia then asked her age, and when she refused to answer, he guessed her to be about 45 years old.  Plaintiff claims that Dr. Anastasia then proceeded to explain that Plaintiff would be ineligible to participate in the Japanese public retirement plan if she was over the age of 35, leaving her little money for retirement at Japan's mandatory retirement age of 60.  Plaintiff claims that Dr. Anastasia made other comments about living conditions in Japan which she believed were intended to discourage her from pursuing the

-7-

position there.

21.  Defendant denies that Dr. Anastasia made any age-related or other improper comments during the interview.  Rather, Defendant claims that Dr. Anastasia's extensive interview experience led him to "an easy decision" that Plaintiff "would not be a good fit" for the Kobe position.  Dr. Anastasia claims to have concluded that Plaintiff was not qualified for the position because: 1) she was hesitant during the interview when answering questions; 2) she showed no evidence of leadership or initiative, but was "wishy-washy"; 3) she had remained in an essentially entry-level, non-tenured position since receiving her Ph.D. in 1992, with no real plan for career advancement; 4) she exhibited a tendency to change her mind often, as evidenced by her change of Ph.D. focus three years into her program; 5) she lacked the focus to meet the Asia group's priority-setting needs; 6) she had mediocre communication skills and lacked the command of English necessary for the Kobe position; and 7) she lacked strong thinking and problem-solving skills, as well as evidence of leadership involvement with management.

22.  On October 7, 1997, Dr. Anastasia called Plaintiff to tell her that she would not be hired for the Kobe position, because her qualifications did not match the open position.  He said that her file would be sent back to Cincinnati, to be considered for a position based there.

23.  A few days after her call from Dr. Anastasia, Plaintiff called Dr. Barnum regarding her rejection for the Kobe position, and advised him that Dr. Anastasia had asked her age during the interview.  By letter dated October 9, 1997, she also asked Dr. Barnum to reconsider her application for the toxicologist position in Japan.  The letter specifically stated that Dr. Anastasia had asked her how old she was, and complained that she had been discriminated against on the basis of her age.

24.  P&G offered Plaintiff the opportunity to interview in Cincinnati again for an open toxicologist position there, without re-presenting her research seminar.

25.  On December 18, 1997, Plaintiff returned to Cincinnati to interview for the position of Human Safety Toxicologist, Laundry and Cleaning Products, reporting directly to Dr. Mark Lafranconi, Section Head, Product Safety, Fabric and Home Care.  Despite his 25 out of 32 rating when he interviewed Plaintiff in August 1997, Dr. Lafranconi assigned her an overall recruiting score of 13 out of 32 during this second interview.  His assessment of her "Technical Mastery" declined two levels, from "excellent" to "strong," as did his assessment of her "Communication," from "very strong" to "moderate."  Contrary to his previous indication that he would hire Plaintiff, Dr. Lafranconi then indicated that he would not.

26.  The scores assigned Plaintiff by the other interviewers during her December 1997 visit also were lower than those from her prior visit.

27.  Dr. Lafranconi reported to Dr. Robert Rapaport, then P&G's Associate Director, Product Safety, Fabric and Home Care.  Dr. Rapaport was the hiring authority with respect to the open toxicologist position in Cincinnati for which Plaintiff was interviewed.  By letter dated January 16, 1998, Dr. Rapaport informed Plaintiff that she would not be offered the Cincinnati toxicologist position.  Although the letter offered no explanation for that decision, Dr. Rapaport later indicated that he was "just not impressed" by Plaintiff, and that he believed she "lacked the energy, the spark, the track record" to succeed in the position.

28.  Dr. Rapaport had not met with or interviewed Plaintiff during her previous visit to Cincinnati with respect to the position in Kobe, Japan, nor had he spoken with Dr. Anastasia or others who had interviewed Plaintiff during her prior visit to Cincinnati about the decision not to

hire her for the position in Japan.

29.  Defendant hired 27-year-old Drew Badger for the Cincinnati position for which
Plaintiff had interviewed.

30.  After Plaintiff was rejected for both the Kobe, Japan and Cincinnati, Ohio
toxicologist positions, she filed a charge of discrimination with the Equal Employment
Opportunity Commission.

31.  After already having declined to hire Plaintiff for either position, Defendant
discovered that Plaintiff previously had applied for employment with P&G on at least six
occasions, contrary to the representation in her 1997 applications that she never previously had
done so.

## O P I N I O N

### Standards Applicable to Motions for Summary Judgment

The summary judgment procedure under Fed. R. Civ. P. 56 was designed to secure a just,
speedy and inexpensive determination of any action.  *Celotex Corp. v. Catrett*, 477 U.S. 317,
327, 106 S. Ct. 342 (1986).  Rule 56(c) permits the Court to grant summary judgment as a matter
of law, however, only after the moving party has identified as the basis of its motion "the
pleadings, depositions, answers to interrogatories, and admissions on file, together with the
affidavits, if any," which demonstrate the absence of any genuine issue of material fact.  *Id*. at
323.

The party opposing a properly supported motion for summary judgment "may not rest
upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that
there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

2505  (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S. Ct.

1575 (1968)).  The evidence of the nonmovant is to be believed and all justifiable inferences are

to be drawn in his favor.  *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398

U.S. 144, 158 90 S. Ct. 1598 (1970)).

The function of the court is not to weigh the evidence and determine the truth of the

matter but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.

There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict for that party.  *Anderson* at 249 (citing *Cities Serv.*, 391 U.S. at

288-289).  If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 84, 87 S.

Ct. 1425 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be

granted.  *Anderson*, 477 U.S. at 249.

"The courts have long recognized that the utility of summary judgment as a method of

resolving employment discrimination claims involving questions of intent and motivation is

limited."  *Tragler v. Rondy Inc.*, 45 F.3d 431 [unpub.], 1994 WL 709285, *4 (6th Cir. 1994)

(citing *Thornbrough v. Columbus & Greenville R.R.*, 760 F.2d 633, 640-41 (5th Cir. 1985)); *see*

*also Locke v. Commercial Union Ins. Co.*, 676 F.2d 205, 207 (6th Cir. 1982) (Jones, J.,

dissenting) (quoting *E.E.O.C. v. Southwest Texas Methodist Hosp.*, 606 F.2d 63, 65 (5th Cir.

1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1314 (1980)).  Although the Sixth Circuit affirmed

the granting of summary judgment in both *Tragler* and *Locke*, that Court also has recognized,

and indeed, acquiesced in, the reluctance of courts to grant summary judgment in "discrimination

suits where . . . motive and intent are crucial elements and the proof is in the hands of the alleged

wrongdoers."  *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 n.4 (6th Cir. 1986)

(quoting *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 759 (9th Cir. 1980)).

The Court will apply these standards in considering each of Plaintiff's claims.

**Age Discrimination Claim**

    **a. Applicable Substantive Law**

A plaintiff may establish a claim of age discrimination either by introducing direct evidence of discrimination, or by producing circumstantial evidence which would support an inference of discrimination. *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). These alternative paths "are mutually exclusive," meaning that "a plaintiff need only prove one or the other, not both." *Id.* at 348-49.

Direct evidence of discrimination is evidence which, if believed, compels a conclusion that unlawful discrimination "was at least a motivating factor" in the employer's actions. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Conclusory allegations, speculation, conjecture and subjective beliefs do not constitute direct evidence of discrimination. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992); *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986), *cert. denied*, 480 U.S. 919 (1987). A plaintiff who succeeds in producing direct evidence of discrimination, however, need not comply with the additional evidentiary scheme outlined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (*see infra*). *Kline*, 128 F.3d at 349.

Absent direct evidence, a plaintiff may establish a *prima facie* case of age discrimination through circumstantial evidence, by proving the following four factors:

        1) that she was 40 years old or older at the time of the alleged discrimination;

      2) that she was subjected to adverse employment action;

      3) that she was qualified for the position; and

      4) that the position was filled by a substantially younger person.[2]

*See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996)[3]; *Burdine*, 450 U.S. at 253-54; *McDonnell Douglas*, 411 U.S. 792.  Analysis under the "qualification" prong should "focus on a plaintiff's <u>objective</u> qualifications."  *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575(6th Cir. 2003) (*en banc*) (emphasis in original).  A plaintiff thus can satisfy the *prima facie* burden "by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field."  *Id.* at 575-76.

      If a  plaintiff succeeds in establishing a *prima facie* case, the defendant must present some legitimate, non-discriminatory reason for its failure to hire her.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).  Once the defendant has met that "burden of production," the plaintiff then must prove that the defendant's articulated reason is a pretext for age discrimination.  *Id.* at 507; *Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001).  Additional evidence may not be necessary, however.  *St. Mary's Honor Ctr.*, 509 U.S. at 511.  Rather, a plaintiff's *prima facie* case, combined with sufficient evidence to show that the employer's asserted justification lacks credibility, will permit an inference of an unlawful discriminatory

---

[2]The "substantially younger" language adopted in *O'Connor, infra,* clarified what previously were inconsistent standards for the fourth element of an ADEA *prima facie* case.  *See, e.g., Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1329 (6th Cir. 1994).

[3]To date, the Supreme Court has presumed, but not actually addressed, the applicability of the McDonnell Douglas framework in ADEA cases.  *See O'Connor*, 517 U.S. at 313; *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000).

motive. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000).

A plaintiff may prove that the defendant's proffered reasons are not worthy of belief by showing that: 1) the reasons had no basis in fact; 2) the reasons were not the actual motivation for the employment decision, or 3) the reasons were insufficient to motivate the employment decision. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994); *Chappell*, 803 F.2d at 266; *Grant v. Harcourt Brace & Co.*, 12 F. Supp.2d 748, 757 (S.D. Ohio 1998) (Marbley, J.), *aff'd*, 191 F.3d 452 (1999). The first means requires the plaintiff to show that the reasons given for the employment decision never happened or were factually false. *Manzer*, 29 F.3d at 1084. The second consists of showing that "an illegal motivation was more likely than [the reasons] offered by the defendant." *Id.* The third could be met by proof that younger candidates with equal or lesser qualifications were hired instead of the plaintiff. *Id.* While employers' business judgment regarding employment matters traditionally has been accorded some deference, *see Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986), the reasonableness of a business decision may be questioned to the extent it sheds light on whether the employer's proffered reason for an employment action was the real motivation. *See Wexler,* 317 F.3d at 576-77.

When evidence shows that a employer considered both a protected trait and other factors in making an employment decision, "[t]he critical inquiry . . . is whether [the protected trait] was a factor in the employment decision *at the moment it was made*." *Price Waterhouse v. Hopkins*, 490 U.S. 237, 241 (1989)(emphasis in original). Anti-discrimination statutes were intended "to condemn even those decisions based on a mixture of legitimate and illegitimate considerations." *Id*. Once a plaintiff shows that a protected trait "played a motivating part" in an employment

decision, the defendant may avoid a finding of liability only by proving by a preponderance of

the evidence "that it would have made the same decision even if it had not allowed [the protected

trait] to play such a role." *Id*. at 245. This approach does not shift the burden of proof, but

rather assigns the employer a burden akin to presenting an affirmative defense. *Id*. at 246.

While the evidentiary scheme outlined in *Burdine*, 450 U.S. at 256-58, remains valid in

other cases, it is inapposite as to an employment decision based on mixed motives, and the

plaintiff in a mixed motives case thus need not prove that the prohibited reason was the only

reason for her discharge. *Price Waterhouse*, 490 U.S. at 247. "An employer may not . . .

prevail in a mixed motives case by offering a legitimate and sufficient reason for its decision if

that reason did not motivate it at the time of the decision." *Id.* at 252. Nevertheless, the ultimate

burden of persuading the trier of fact that the employer intentionally discriminated against her

based on age remains at all times with the plaintiff. *Reeves*, 530 U.S. at 143; *Whitt v. Lockheed

Martin Util. Servs. Inc.*, 209 F. Supp.2d 787, 792-93 (S.D. Ohio 2002) (Holschuh, J.) (both *citing

Burdine*, 450 U.S. at 253).

Even the *McDonnell Douglas* test, however, "is not to be applied mechanically in age

discrimination cases, but rather on a case-by-case basis, focusing on whether age was in fact a

determining factor in the employment decision." *Butler v. Ohio Power Co.*, 91 F.3d 143, 1996

WL 400179 at *4 (6th Cir. July 16, 1996) (citing *Barnes v. GenCorp., Inc.*, 896 F.2d 1457, 1465

(6th Cir.), *cert. denied*, 498 U.S. 878 (1990)); *see also Russell v. Teledyne Ohio Steel*, 892 F.2d

1044, 1990 WL 812 (6th Cir. Jan. 8, 1990) ("Notwithstanding our adoption of the McDonnell-

Douglas criteria . . . the criteria need not be applied automatically and . . . a plaintiff establishes a

claim of age discrimination where he demonstrates that age was a substantial factor in his

discharge.") (citing *Laugeson v. Anaconda Co.*, 510 F.2d 307, 312 & 317 (6th Cir. 1975)).

Accordingly, whether unlawful discrimination was a motivating factor in the employer's actions

remains the crucial element of any age discrimination claim. *See Hazen Paper Co. v. Biggins*,

507 U.S. 604, 610 (1993) (stating that plaintiff must show that "the protected trait (under the

ADEA, age) actually motivated the employer's decision" and that plaintiff's age must have "had

a determinative influence on the outcome").

**b. Analysis**

***The Kobe Position***

In support of her claim that Defendant's failure to hire her for the toxicologist position in

Japan was the result of unlawful discrimination, Plaintiff alleges all elements of a *prima facie*

case of age discrimination. (*See* Doc. 28, ¶¶ 7 [protected age group], 9 [qualified for position],

18 [not hired], 19 ["substantially younger" hiree]). Beyond those elements, however, she also

alleges that the individual with hiring authority made discriminatory remarks during her

interview for the Kobe position (*see* Doc. 28, ¶¶ 12, 13), and urges that such comments amount

to direct evidence of age discrimination. (Doc. 39, pp. 12-13).

*1) Direct evidence*

In its 29-page motion for summary judgment, Defendant relegates Plaintiff's putative

direct evidence of discrimination to a single footnote (*see* Doc. 35, p. 19, n.6), urging with little

analysis that any such comments "do **not** serve as direct evidence of discrimination." *See id.*

(emphasis in original). In its reply brief, Defendant argues that merely questioning Plaintiff

about her age does not evidence discriminatory intent. (Doc. 41, p. 4). Defendant's argument,

however, somewhat misrepresents the nature of Plaintiff's evidence. Plaintiff contends that Dr.

Anastasia not only questioned her about her age, but also proceeded to explain why entering the work force in Japan at her age would be undesirable.  (Plaintiff's Deposition, pp. 192-93).[4]

Unfortunately, existing case law provides less than definitive guidance as to exactly what qualifies as "direct" evidence.  *See Jacklyn*, 176 F.3d at 926.  Courts have found direct evidence to exist not only "where an employer's policy is discriminatory on its face," but also "where a statement . . . shows discriminatory motive on its face."  *Schlett v. Avco Fin. Serv., Inc.*, 950 F. Supp. 823, 828 (N.D. Ohio 1996) (citations omitted) (emphasis added).  "For example, racial slurs or comments constitute direct evidence that a termination may have been racially motivated."  *Norbuta v. Loctite Corp.*, 1 Fed. Appx. 305, 312 (6th Cir. 2001) (citing *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1249 (6th Cir.1995)).

Vague, ambiguous or isolated remarks are insufficient to create a direct-evidence case of employment discrimination.  *See Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir.), *cert. denied*, 510 U.S. 861 (1993); *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330-31 (6th Cir.1994).  Logically, then, the converse is true  -- comments about a plaintiff's protected trait [*e.g.*, age], uttered by the person who made the employment decision at issue, and especially those comments made in the context of that decision, may be sufficient "direct evidence" of discrimination.  *See, e.g., Letcher v. Sharp Electronics Corp.*, 89 F.3d 834 [unpub.], 1996 WL 306553 at *3 (6th Cir. June 6, 1996) (evidence is "direct" if related specifically to adverse employment decision).  In one post-*Jacklyn* decision, for example, the Court found that a

---

[4]Although Defendant challenges Plaintiff's version of what transpired during the interview with Dr. Anastasia (*see* Doc. 41, p. 2), disputed facts must be construed in Plaintiff's favor for purposes of summary judgment.  *Anderson*, 477 U.S. at 255.  Moreover, Dr. Anastasia's own deposition testimony lends credence to Plaintiff's contention that he cited her age as a drawback within the Japanese retirement system.  (*See* Doc. 41, p. 3, citing Anastasia Deposition, pp. 57-58)

superior's comment about a employee's race, made within a disciplinary report, was "one of those 'rare' [examples]" of direct evidence of discrimination. *See Weberg v. Franks*, 229 F.3d 514, 523 (6th Cir. 2000).  Other cases also suggest that the identity of the speaker of, assumptions reflected in, and/or the timing of discriminatory remarks is relevant to whether they constitute "direct evidence" of discrimination. *See Wexler*, 317 F.3d at 572 (statements "made by the decisionmaker, indicat[ing] a [discriminatory] belief, and . . . directed at [the plaintiff] at the very time" of the challenged employment action may "evince[ ] a discriminatory intent"); *Talley*, 61 F.3d at 1249 (holding that repeated racial slurs by two owners constituted direct evidence that plaintiff's termination might have been racially motivated); *Higdon v. Storz Instrument Co.*, 211 F.3d 1269 [unpub.], 2000 WL 420685 at *2 (6th Cir. Apr 12, 2000) (noting that manager's comment at all-male employee meeting that he liked "boy's club" atmosphere posed "close[ ] call" as direct evidence of discrimination, even though occurred after female plaintiff's termination); *see also Das v. Ohio State Univ.*, 57 Fed. Appx. 675 (6th Cir. 2003)(evidence of "cultural insensitivity" not "direct evidence" if not causally or temporally linked to adverse employment action).

While Dr. Anastasia's alleged comments certainly fall short of the unambiguous "I'm not hiring you because you're too old" form of direct evidence, such "smoking gun" evidence is presumed rarely to be available in discrimination matters. *See Tragler*, 1994 WL 709285 at *4; *see also Locke*, 676 F.2d at 207 (Jones, J., dissenting); *Cooper*, 795 F.2d at 1272 n.4.  One need not make a quantum inferential leap in order to detect a possible discriminatory motive from an interviewer's questions about an applicant's age, followed by a suggestion that her age would be a drawback as to the position under consideration.  Given that the proffered evidence in this case

is attributed directly to the individual with hiring authority, and consisted of remarks made during Plaintiff's actual interview for the Kobe position, the Court determines that Plaintiff has presented direct evidence of age discrimination as to that position. Defendant thus is not entitled to summary judgment regarding Plaintiff's age discrimination claim for the Cincinnati position.

### 2) Circumstantial evidence

"If a plaintiff can produce direct evidence of discrimination then the *McDonnell Douglas-Burdine* paradigm is of no consequence." *Kline*, 128 F.3d at 349. Accordingly, our conclusion, *supra*, that Plaintiff has produced direct evidence of age discrimination obviates the need to address Defendant's additional argument that Plaintiff has failed to establish a *prima facie* case of age discrimination.

The Court nonetheless observes that Plaintiff apparently <u>has</u> set forth a viable *prima facie* case, as she has submitted credible evidence sufficient to show that she was objectively qualified for the Kobe toxicologist position. *See Wexler*, 317 F.3d at 575-76. Defendant challenges only Plaintiff's ability to establish the qualification prong, urging that her false response regarding prior job applications rendered her unqualified. Under existing Supreme Court precedent, however, an employer may not escape discrimination liability based on the existence of a nondiscriminatory reason of which the employer was unaware when making the employment decision. *See McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 360-61 (1995); *see also Price Waterhouse*, 490 U.S. at 252. As Defendant did not know of Plaintiff's alleged falsification when it declined to hire her, that falsification did not render her unqualified for purposes of this analysis. To the contrary, because she held the necessary educational degree, and because nearly all P & G representatives assessed her favorably as to all other traits

*-19-*

considered qualifications for the position, Plaintiff was objectively qualified for the job.  Even

absent direct evidence of discrimination, then, Plaintiff could satisfy the circumstantial evidence

requirements for a case of age discrimination.

      The Court also finds that Defendant's articulation of other legitimate, non-discriminatory

reasons for its failure to hire Plaintiff is not sufficient for summary judgment purposes to

overcome the suggestion that Plaintiff's age may have been a factor in Defendant's decision.

Even if Dr. Anastasia's alleged age-based comments did not constitute direct evidence of

discrimination, such remarks still would create a jury issue as to the proposed legitimate reasons

underlying Defendant's hiring decision.  *See Liberty Lobby*, 477 U.S. at 255; *Reeves,* 530 U.S. at

148; *Manzer*, 29 F.3d at 1084.  Because Defendant's evidence falls short of establishing

conclusively that Plaintiff's age was not a motivating factor behind its employment decision,

Defendant is not entitled to summary judgment on Plaintiff's age discrimination claim with

respect to the Kobe position.

### The Cincinnati Position

      Plaintiff's complaint claims that her rejection for a toxicologist position in Cincinnati

also was the product of unlawful age discrimination.  (*See* Doc. 29, ¶¶ 17-19, 22-25).  As to that

employment decision, however, Plaintiff has presented no direct evidence of discrimination,

relying instead on the *McDonnell Douglas prima facie* case framework.  (*See id.*).

      As it did with respect to Plaintiff's claim regarding the Kobe position, *supra*, Defendant

challenges Plaintiff's qualification for the Cincinnati position, arguing that Plaintiff's false

representation that she had not previously applied for a job at P&G rendered her unqualified.

The Court again rejects that argument, reiterating our conclusions that Defendant cannot have

based its assessment of Plaintiff's qualifications on information of which it was unaware, *see McKennon*, 513 U.S. at 360, and that Plaintiff was objectively qualified for the toxicologist position. *See Wexler*, 317 F.3d at 575-76.

We nonetheless conclude, however, that as to the Cincinnati position, Plaintiff is wholly unable to sustain her burden of showing that Defendant's articulated legitimate, non-discriminatory reason for its actions is unworthy of belief. *St. Mary's Honor Ctr.*, 509 U.S. at 507. Defendant claims that it did not hire Plaintiff for the Cincinnati position simply because she did not seem well suited for the job, in that interviewers uniformly assessed her skills as marginal, and the individual with hiring authority considered her to be lacking in "the energy, the spark, the track record" necessary to succeed. This differs from the situation with respect to the Kobe position, where most interviewers gave Plaintiff high marks and recommended that she be hired. Also unlike the situation regarding the position in Japan, the record is devoid of any suggestion that Defendant viewed or had reason to view Plaintiff's age as a drawback with respect to the Cincinnati position.

Even to the extent that Defendant's explanation regarding the Cincinnati job decision might be deemed suspect – *e.g.*, because even the scores subjectively assigned to Plaintiff by the one interviewer who assessed her on both occasions were substantially lower as to the Cincinnati position than as to the Kobe position – the Court finds that no suspicion of pretext for age discrimination reasonably could be inferred from such discrepancies. In order to prevail in an age discrimination action, Plaintiff ultimately must produce some credible indicia that her age influenced or motivated Defendant's actions. *See Hazen Paper Co.*, 507 U.S. at 610. Having failed to show that Defendant's asserted justification lacks credibility, *see Reeves*, 530 U.S. at

148; *Manzer*, 29 F.3d at 1084, Plaintiff cannot prove that Defendant's articulated reason for the Cincinnati hiring decision is a pretext for age discrimination. Summary judgment therefore is appropriate as to that claim.

**Retaliation Claim**

> **a.  Applicable Limitations Period**

Plaintiff brings her retaliation claim under Ohio Revised Code § 4112.02(I), which provides in its entirety that "[i]t shall be an unlawful discriminatory practice":

> For any person to discriminate in any manner against any other
> person because that person has opposed any unlawful
> discriminatory practice defined in this section or because that
> person has made a charge, testified, assisted, or participated in any
> manner in any investigation, proceeding, or hearing under sections
> 4112.01 to 4112.07 of the Revised Code.

The "unlawful discriminatory practice[s]" so defined include hiring discrimination based on age. *See* Ohio Rev. Code 4112.02(A).

Civil actions for damages, injunctive relief, or any other appropriate relief for violations of Ohio Revised Code Chapter 4112 are authorized by Ohio Rev. Code § 4112.99. Section 4112.99 does not contain an explicit statute of limitations. *Cosgrove v. Williamsburg of Cincinnati Mgmt. Co., Inc.*, 70 Ohio St. 3d 281, 282 (1994). The Ohio Supreme Court has determined, however, that a six year statute of limitations applies to claims brought under Section 4112.99. *See id.* at 281 (syllabus).

In arguing that Plaintiff's retaliation claim instead is subject to and barred by a 180 day statute of limitations, Defendant cites only to a concurring opinion within a unpublished decision of a single Ohio court of appeals. (*See* Doc. 35, p. 26, citing *Powers v. Pinkerton, Inc.*, 2001 WL 60035 at *16 (Ohio Ct. App. Jan. 18, 2001)). That opinion's suggestion that a 180 day

limitations period applies to retaliation claims brought under Ohio Rev. Code § 4112.02 is both

dictum and contrary to existing Ohio Supreme Court law. *See Cosgrove*, 70 Ohio St. 3d at 281

(syllabus).

In light of that fact, and given that Defendant's reply memorandum fails even to address

the *Cosgrove* decision or to attempt to bolster Defendant's asserted statute of limitations defense

to Plaintiff's retaliation claim (*see* Doc. 41, pp. 13-16), the Court concludes that Plaintiff's

retaliation claim under Ohio Rev. Code § 4112.02(I) is subject to a six year statute of limitations,

and was filed within that applicable time period. Defendant's motion for summary judgment

based upon the alleged untimeliness of Plaintiff's retaliation claim therefore is denied.

**b.** **Applicable Substantive Law**

Federal case law interpreting anti-discrimination statutes generally is applicable to

analogous claims brought under Ohio Rev. Code § 4112. *See Reddy v. Good Samaritan Hosp. &*

*Health Ctr.*, 137 F. Supp.2d 948, 972 n.35 (S.D. Ohio 2000) (Rice, J.); *Black v. Columbus Pub.*

*Sch.*, 124 F. Supp.2d 550, 584 (S.D. Ohio 2000) (Holschuh, J.). To establish a *prima facie* case

of retaliation under the ADEA, a plaintiff must prove that: 1) she engaged in a protected activity;

2) this exercise of protected rights was known to defendant; 3) defendant thereafter took adverse

employment action against her; and 4) there was a causal connection between the protected

activity and the adverse employment action. *Morris v. Oldham County Fiscal Court*, 201 F.3d

784, 792 (6th Cir. 2000) (citations omitted). The elements of a retaliation claim under Ohio law

are essentially identical. *See Pflanz v. City of Cincinnati*, 149 Ohio App. 3d 743, 762-63 (Ohio

Ct. App. 2002).

Evidence that an employer took adverse employment action soon after a plaintiff

exercised protected rights is relevant to the issue of causation. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000); *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 230 (6th Cir. 1987). Under Ohio law, however, "[a]bsent other direct or compelling circumstantial evidence," such "temporal proximity alone is insufficient to support a finding of a causal connection." *Pflanz*, 149 Ohio App. at 763.

Retaliation can be found "whether or not the challenged practice ultimately is found to be unlawful." *Johnson v. University of Cincinnati*, 215 F.3d 561, 579-80 (6th Cir.) (citation omitted), *cert. denied*, 531 U.S. 1052, 212 S. Ct. 657 (2000). Accordingly, a plaintiff may state a claim for retaliation by showing that her opposition to an employment practice was "reasonable" and based on "a good faith belief that the opposed practices were unlawful." *Id*. at 579.

Once the plaintiff establishes a *prima facie* case, the employer must articulate a legitimate, nondiscriminatory justification for its actions. *Morris*, 201 F.3d at 792-93; *Courtney v. Landair Transport, Inc.*, 227 F.3d 559, 565-66 (6th Cir. 2000). If the employer succeeds in doing so, the burden shifts back to the employee to show that the employer's explanation was mere pretext. *Id*.

**c. Analysis**

The undisputed facts in this matter reveal that after Plaintiff complained to Procter & Gamble about perceived age discrimination in the selection process for the Kobe position, she also was rejected for a toxicologist position in Cincinnati. Plaintiff's complaint of age discrimination clearly was a protected activity within the meaning of the Ohio retaliation statute. Plaintiff's retaliation claim, then, turns on her ability to establish a causal connection between her complaint and the decision not to hire her for the Cincinnati position. The Court concludes

*-24-*

that Plaintiff has failed to establish that connection.  Other than the fact that the rejection for the

Cincinnati position came just two months after the rejection for the Kobe position, Plaintiff has

produced nothing to indicate that the second decision was in any way associated with the first.

Proximity in time alone is not enough to establish the requisite causal connection.  *Pflanz*, 149

Ohio App. at 763.

Moreover, as outlined in our analysis, *supra*, of Plaintiff's age discrimination claim re the

Cincinnati position, Defendant has articulated legitimate, nondiscriminatory reasons for its

decision not to offer Plaintiff the Cincinnati toxicologist job.  For the reasons stated above, we

conclude that Plaintiff has failed to impugn that proffered justification as pretextual.

Defendant's motion for summary judgment as to Plaintiff's retaliation claim therefore is well

taken.

## **Conclusions of Law**

1.  Plaintiff has produced direct evidence of age discrimination with respect to the

position in Kobe, Japan.  *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d

921, 926 (6th Cir. 1999); *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997).

2. Plaintiff has set forth a *prima facie* case of age discrimination with respect to the

position in Kobe, Japan, having shown that she was objectively qualified for the position.

*O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996); *McKennon v. Nashville*

*Banner Publ. Co.*, 513 U.S. 352, 360-61 (1995)*; Texas Dep't of Cmty. Affairs v. Burdine*, 450

U.S. 248, 253-54 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Wexler v.*

*White's Fine Furniture, Inc.*, 317 F.3d 564, 575(6th Cir. 2003) (*en banc*); .

3.  A genuine issue of material fact exists regarding whether Defendant's articulated

legitimate, nondiscriminatory reason for its failure to hire Plaintiff for the position in Kobe, Japan, was a pretext for age discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

4.  Plaintiff is unable to show the existence of a genuine issue of material fact regarding whether Defendant's articulated legitimate, nondiscriminatory reason for its failure to hire Plaintiff for the position in Cincinnati, Ohio, was a pretext for age discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

5.  Plaintiff is unable to show a causal connection between her complaints of age discrimination with respect to the Kobe, Japan, hiring decision, and Defendant's subsequent decision not to hire her for the Cincinnati, Ohio, position. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)*; Pflanz v. City of Cincinnati*, 149 Ohio App. 3d 743, 762-63 (Ohio Ct. App. 2002).


IT THEREFORE IS ORDERED that Defendant's motion for summary judgment (Doc. 35) hereby is GRANTED in part and DENIED in part.  The motion is GRANTED as to Plaintiff's claims of age discrimination and retaliation with regard to the toxicologist position in Cincinnati, Ohio (Doc. 28, Count I, in part, and Count II in its entirety), and such claims hereby are DISMISSED with prejudice.  The motion is DENIED as to Plaintiff's claim of age discrimination with regard to the toxicologist position in Kobe, Japan (Doc. 28, Count I, in part),

which claim shall proceed in accordance with the schedule established by this Court.

**IT IS SO ORDERED.**




                                                          S/Herman J. Weber
                                        Herman J. Weber, Senior Judge
                                        United States District Court


J:\HJWF\01-272.msj.wpd